OPHIR SILVER MINING COMPANY, Respondent, v. C. CARPENTER, et als., Appellants.

Measurement of Water Appropriation. It seems that the quantity of water appropriated in any given case is to be measured by the capacity of the ditch or flume at the smallest point; that is, at the point where the least water can be carried through it.

Appeal—Insufficiency of Evidence. Where a finding for plaintiff, as to the quantity of a water appropriation, was founded upon the basis that the flume was of a certain size, and also of a certain grade; and it appeared on appeal that, though the size of the flume was proved, there was no sufficient proof of its grade: *Held*, on proper objection, that the judgment should be set aside.

New Issues not to be Raised in the Supreme Court. Where on the trial of a water case it was conceded that the findings as to the quantity of water appropriated, were to depend upon the capacity of the flume at a certain point: *Held*, that the investigation in the supreme court, as to the question of quantity, should be confined to the same point of the flume.

Appeal from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion of the Court.

*Beatty & Denson*, for Appellants.

*Williams & Bixler*, for Respondent.

By the Court, Lewis, C. J.:

In the years 1858 and 1859, one J. H. Rose appropriated a certain quantity of water from the Carson River, by diverting the same for mining purposes, to be used some four miles below the point of diversion. The water thus diverted was conducted to the locality where it was used by means of a ditch and flumes. In the year 1860, the grantors of the respondent also appropriated water from the river, diverting it at a point below the head of the Rose ditch, and using it as motive power for a quartz mill. In the winter of 1861 this ditch was improved and enlarged; and again it is claimed by appellants that it was very much enlarged in the year 1865—a fact important to be determined in the case, for the reason that in the year 1862 the Rose ditch was also greatly enlarged; hence, although admitted that these appellants as the suc-

26

cessors of Rose are first entitled to the full quantity of water appropriated by him in the year 1859, it is also admitted that after the
appellants have received that, the respondent is entitled to so much
as was appropriated by it, before the appellants can further claim
the additional quantity appropriated by them in the year 1862, by
the enlargement of the old Rose ditch. Thus, it became necessary
in the Court below to ascertain, first, the capacity of the Rose ditch
as constructed in the year 1859; and secondly, the capacity of the
respondent's ditch, and whether it was enlarged in the year 1865,
and if so, to what extent. There is no controversy between counsel
as to the law of the case, it being conceded on both sides that the
quantity of water appropriated in any given case is to be measured
by the capacity of the ditch or flume at its smallest point; that is,
at the point where the least water can be carried through it. Nor
is it questioned that the respondent is entitled to the quantity of
water diverted by its predecessors in the winter of 1861, before the
appellants can claim the additional quantity appropriated by them
in the winter of 1862, by means of the enlargement of the old ditch.
Therefore, the only material points to be determined were, first, the
capacity of the Rose ditch at its smallest carrying point; and
secondly, the capacity of the ditch built by the predecessors of
respondent, in the year 1861–2, as compared with its present
ditch.

The Court below found the capacity of the flume, just below the
head of the Rose ditch, and which seems to be admitted was the
point of smallest capacity, to be four and forty-eight one hundredths
cubic feet per second, being the quantity capable of being carried
by a flume twenty by eighteen and three-fourths inches, on a grade
of one-eighth of an inch to the rod. We have not been able to find
testimony in the record, sufficient to sustain this conclusion. The
only persons who appear to have testified respecting the dimensions
and grade of this flume were Rose, Hunt, Rosenbecker and Chapin.
As to the size of the flume in question, the finding that it was
twenty by eighteen and three-fourths inches is, perhaps, sustained
by the testimony; but there appears to be no evidence directly
sustaining the finding that its grade was only one-eighth of an inch
to the rod. Rose himself swears that the ditch had a grade of

three feet to the mile, but that the flumes were on a grade of a half inch to twelve feet. To destroy the force of this evidence, it is claimed by counsel for respondent that the witness admitted in another portion of his testimony, that at one point he built a piece of flume twenty-four feet in length on the same grade as the ditch, which would make it less than one-eighth of an inch to the rod, as found by the Court. The testimony relied on is thus given in the transcript: After stating that this flume was put there to carry the water of the ditch under Dana Creek: to the question, "What was the grade of that short flume?" he replied: "I told you I had graded it myself. When the water came through, I put this in the bank, two lengths of it in that place. When the water came there I commenced the two joints of flume. Question. You could not connect it with the grade of the ditch, and let the water under it? Answer. Not at that point. Question. The surveyor made the grade when he surveyed the ditch? .Answer. Yes. This was put in there in case the water should come down the ravine. Q. Did the surveyor, when he made that survey, indicate that as a piece of flume? A. I do not think he did. Q. The regular survey was made as though that was a ditch part, and you put in a piece of flume? A. Yes. The Chinamen had dug around the point before. Q. The grade of that must have been changed? A. When I came to dig it there I went and cut a little across and managed it so that I got the water high enough, so that I could start it into the ditch." This is the testimony relied on by counsel as an admission that this twenty-four foot flume was on a grade of only three feet to the mile. We can draw no such conclusion from it. The whole is rather indefinite; but if any thing can be drawn from it, it is that the flume was not on the grade surveyed for the ditch, for the witness speaks of changing that grade. However that may be, even if it were admitted that it was on a grade of only three feet to the mile, it proves nothing in favor of the respondent; for the reason that the only evidence touching the dimensions of this piece of flume shows it to have been twenty-two by twenty-three inches, which is much larger than the flume above upon which the finding of the Court is based. We do not think it is possible to interpret the testimony quoted as showing with any degree of satis-

faction what the grade of this short flume was.   Furthermore, it appears to have been conceded by the parties in the Court below, that the capacity of the long flume, near the head of the ditch, was to determine the quantity of water appropriated; and upon its capacity the Court below based its findings.   Hence, it is but fair that the investigation in this Court should be confined to the same section of the flume.   The only distinct and satisfactory testimony by Rose then, as to the grade of the flumes, shows them to have been one half an inch to twelve feet.

Hunt testified that his survey showed the general grade of the old Rose ditch to be about two and seven-tenths feet to the mile. The general grade of the ditch may very well have been as stated by Hunt, and still the grade of the various flumes have been more than that.   It is not claimed that he testified to the grade of the flume in question, or any flume specially; and it is perfectly manifest the grade of the flumes was greater than that of the ditch. So Hunt's testimony need not and does not necessarily conflict with the other evidence showing the flumes to have been upon a grade of one half inch to the twelve feet, or more.   Chapin's testimony goes only to the dimensions of the long flume, a fact which we accept as found by the Court below.   The witness Rosenbecker swears positively that the grade of the flumes in the Rose ditch was three-eighths of an inch to the rod; and he also swears that there was no flume in the ditch of less grade.   The witness testifies that he measured the flume in question and took its grade.   Hence, his testimony was based upon no conjecture or speculation, but upon actual measurement.   This evidence, together with that of Rose, is not—as we interpret it—directly contradicted by any witness or any calculation presented in the record.   And as their testimony makes the capacity of the Rose ditch much larger than the Court found it to be, we are compelled to set aside that finding, and award a new trial.

Our conclusion upon this point renders it unnecessary to make any inquiry as to the relative capacity of the respondent's ditch of 1862, and that now used by it.

New trial ordered.

WHITMAN, J., did not participate in the foregoing decision.